# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEJAN VUJOVIC, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 14 C 6245 |
| v. | ) ) Judge John Z. Lee |
| NELS ERIC VORM, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dejan Vujovic filed this diversity action against Defendant Nels Eric Vorm for breach of contract, declaratory judgment, breach of fiduciary duty, and conversion, following his termination from Tekkra Systems, Inc. ("Tekkra"). Vorm now moves to dismiss Counts I, II, and V of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion.

## Factual Background

The story of this case is a common one: two friends start a company, and when business sours, so does their friendship; litigation inevitably ensues. In this particular iteration, three colleagues, Vorm, Vujovic, and fellow coworker Maciej Kempa, decided to leave their jobs at a machine manufacturing company to start their own rival venture. Compl. ¶ 6. They formed Tekkra on March 5, 2005, incorporating in Indiana. *Id.* ¶ 8.

Initially, the company issued 1000 shares. *Id.* ¶ 9. Vorm purchased 400. *Id.* Vujovic and Kempa each purchased 300. *Id.* The three cofounders also became directors of the corporation and elected one another to different roles within the company: Vorm became President, Kempa became Vice President, and Vujovic became Secretary/Treasurer. *Id.*

The three cofounders also entered into a "Stock Purchase and Transfer Restriction Agreement." *Id.* at ¶ 12. The agreement gave the corporation and non-selling shareholders the right of first refusal in the event a shareholder should seek to sell his shares or leave Tekkra. *Id.* When Kempa's employment with Tekkra was terminated sometime in 2006 or 2007, the company opted to exercise this right. *Id.* at ¶ 15. And despite incurring substantial operating losses at the time, Tekkra purchased Kempa's 300 shares for $120,000.00 — an amount that "equaled or exceeded Kempa's capital contribution to the Corporation" — while also agreeing to repay him at least $40,000.00 in shareholder loans he made to the company to help it remain solvent. *Id.* at ¶¶ 14–16.

A year and a half later, Vorm and Vujovic asked another former coworker, Rysard Witowski, to join Tekkra. *Id.* at ¶ 17. Witowski agreed, becoming a director and receiving 144 shares of the Tekkra stock. *Id.* at ¶ 18. To accommodate Witowski's arrival, Tekkra amended its stock purchase agreement ("Amended SPA"). *Id.* at ¶ 19. Under the Amended SPA, Vujovic now owned 300 shares, while Vorm "purported[ly]" held a majority of the company with 516 shares. *Id.* ¶¶ 19, 21.

Vorm used his majority stake in Tekkra to take control of all managerial duties, claiming to have the "final, if not sole, authority" over such matters. *Id.* at ¶¶ 21–22. According to Vujovic, Vorm "conducted the business affairs of Tekkra without input or consent from [the directors] and withheld information from them." *Id.* at ¶ 23. He further refused to disclose pertinent financial information to Vujovic and Witowski and told them to "concentrate on what they were paid to do: design and assemble the Corporation's manufacturing machines." *Id.* at ¶ 24.

Vorm terminated Vujovic's employment on August 13, 2012. *Id.* at ¶ 25. Vujovic claims to have received little explanation for his termination aside from the fact that Vorm wanted to implement change at Tekkra and had the right to do so, given his majority stake in the company. *Id.* A month later, Vorm sent Vujovic a "Notice of Redemption" letter informing him that Tekkra would exercise its right of first refusal and buy his 300 shares of the company. *Id.* at ¶ 28. The letter advised Vujovic that he owed Tekkra $7,500.00 plus interest for a loan the company paid to him in May 2007; Tekkra intended to deduct this amount from its payment for the shares. *Id.* at ¶ 30.

On December 19, 2012, Tekkra sent Vujovic another letter stating that his 300 shares were worth a total of $10,140.00, but that he owed Tekkra a total $11,658.90, once interest was calculated on the May 2007 loan. *Id.* at ¶ 31. Vujovic remained liable for the $1,518.90 balance and, effective that day, he was no longer a shareholder of Tekkra. *Id.*

Prior to the December 19 letter, Vorm had been negotiating the sale of Tekkra's assets. *Id* at ¶ 33. Ultimately, Vorm sold those assets in excess of $700,000. *Id.* at ¶ 35. Vorm recouped a profit from the sale, as well as employment with the new company. *Id.* Witowski, who paid nothing for his shares of Tekkra, received $40,000.00 and was also offered employment. *Id.* Tekkra then officially dissolved on December 12, 2013. *Id.* at ¶ 36.

### Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the

Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.,* 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal,* 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## Analysis

Of the Amended Complaint's five counts, Vorm moves to dismiss three of them: Count I for breach of contract, Count II for declaratory relief, and Count V for conversion.

### I.     Count I – Breach of Contract

In Count I, Vujovic alleges that his termination constituted a breach of contract because his "termination by Vorm was unjustified." Compl. ¶ 39. According to Vujovic, Vorm could only terminate his employment for cause. *Id.* at ¶ 38.

In both Illinois — where Vujovic was employed — and Indiana — whose law governs the Amended SPA — one's employment is heavily presumed to be at will. *See Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 317 (Ill. 1987) ("Nearly all courts agree on the general rule, that an employment relationship without a fixed duration is terminable at will by either party."); *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653 (Ind. 2009) ("The presumption of at-will employment is strong, and we are disinclined to adopt broad and ill-defined exceptions to the employment at will doctrine.").[1]

---

[1] There is some disagreement between the parties as to which state's law should apply. But "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co. of*

4

To overcome this presumption, Vujovic does not allege he had a written employment agreement specifying that he could be terminated "for cause" only. *See* Compl. ¶¶ 38–42. Nor does he allege the existence of an oral contract of this nature. *See id.* Instead — although neither Vujovic nor Vorm characterize it as such — Vujovic appears to assert the existence of an implied-in-fact contract, "whereby a contractual duty is imposed by reason of a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor." *Lampe v. Swan Corp.*, 571 N.E.2d 245, 246 (Ill. App. Ct. 1991); *see also Money Store Inv. Corp. v. Summers*, 909 N.E.2d 450, 459 (Ind. Ct. App. 2009) (An implied contract "may be inferred from the conduct, situation, or material relations of the parties and enforced by law."). Vujovic appears to rely upon certain statements in the Amended SPA as "promissory expressions" related to his employment. Compl. ¶ 38.[2]

The Amended SPA defines "cause" as "termination of employment as a result of gross misconduct, gross neglect of duties, fraud, theft, embezzlement or the commission of a felony the nature of which is likely to adversely affect the Corporation, if the Shareholder continues to be employed by the Corporation." *Id.*, Ex. B, § 1.01(b). Vujovic relies upon this provision to argue that his employment could not be terminated for cause, and because he did nothing to meet that definition of "cause" under the Amended SPA, his termination was a breach of contract. Compl. ¶¶ 40–41. But this construction cannot stand.

Section 2.04 of the Amended SPA dictates what happens to the shares of an employee upon termination. It states, "Upon a Shareholder's cessation of full-time employment with

---

*Canada*, 965 F.2d 195, 197 (7th Cir. 1992). Here, the Court does not believe that the laws of the two states differ materially with respect to Vujovic's "at will" employment status.

[2] The Amended SPA itself is not an employment agreement between Vujovic and the company, as its terms make abundantly clear. Rather, it governs the allocation and subsequent transfer of the company's shares between and among the individual shareholders.

Corporation *for any reason other than death*, the Shareholder . . . immediately shall offer in accordance with Section 8.01 (or be deemed to have made an offer) to sell all of his or her Shares to Corporation at the Purchase Price (or, *in the event of the cessation of the Selling Shareholder's employment for Cause*, at the Discounted Purchase Price)." Compl., Ex. B, § 2.04(a) (emphasis added). Thus, the provision expressly contemplates that employment with Tekkra could be terminated for any number of reasons other than "for Cause." Indeed, one of the main purposes of the provision is to clarify that when an employee is terminated without cause, the employee is entitled to sell the shares to the company at a certain price, but when an employee is terminated with cause, the shares would be purchased at a discounted price. And thus, it would be unreasonable to construe from this provision that Vujovic had an implied-in-fact employment contract that only allowed termination for cause. *See*, *e.g.*, *Lampe*, 571 N.E.2d at 247 (Employee handbook that "merely [gave] examples of the kinds of conduct [that would] subject plaintiffs to discharge" did not amount to a promise "that plaintiffs will only be discharged for cause," and thus plaintiffs failed to state claim for implied-in-fact contract); *Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230, 236 (Ind. Ct. App. 2012) (citing *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1347 (7th Cir. 1995)) (Despite its seemingly "mandatory" nature, employee handbook's statement that "[i]n the event that disciplinary action must be taken against an employee, it will be for just cause," does not create promise of something beyond at-will employment.).

Moreover, the Court does not find convincing Vujovic's argument that because the cofounders "initially behaved" as partners, there was an understanding "their participation in Tekkra would not cease unless they voluntarily chose to withdraw, they were [terminated] for cause or the entity was sold or ceased to exist." Pl.'s Resp. 4. As evidence of this understanding, Vujovic notes the fact that "they elected to be taxed as partners, designating

6

Tekkra as a Subchapter S corporation for tax purposes." *Id.* But this does not suggest an intent to treat each other as partners. *See id.* If anything, it suggests the opposite, as the primary benefit of an S Corporation is the fact that it allows its owners to be taxed similarly to partners while creating a corporate entity by which they can conduct business. *See Byrne v. C.I.R.*, 361 F.2d 939, 942 (7th Cir. 1966). Vujovic's employment agreement, whatever its scope, was with the company, not with Vorm. And, although Vorm may have breached some other agreement or duties governing his relationship with Vujovic, Vorm did not breach an employment agreement with him.

Finally, Vujovic relies on two cases for the proposition that shareholders of a closely held corporation should be treated as partners. *See Hagshenas v. Gaylord*, 557 N.E.2d 316 (Ill. App. Ct. 1990); *Cressy v. Shannon Cont'l Corp.*, 378 N.E.2d 941 (1978) (Ind. Ct. App. 1978). Yet, these cases deal only with whether equal shareholders in a closely held corporation owe each other a fiduciary duty similar to that of partners in a partnership. *See Gaylord*, 557 N.E.2d at 323 (holding that "equal 50% shareholders" owed "duty to exercise the highest degree of honesty and good faith in the dealings and in handling of business assets"); *Cressy*, 378 N.E.2d at 945 (holding that equal owners of closely held corporation "bear a fiduciary duty to deal fairly, honestly, and openly with their fellow stockholders"). These cases do nothing to support Vujovic's argument that Vorm breached an employment contract with him. Accordingly, the Court dismisses Count I for failure to state a claim under Rule 12(b)(6).

## II. Count II – Declaratory Relief

Count II of the Amended Complaint seeks a declaratory judgment that Vorm only owned 400 shares at the time of Vujovic's termination and thus "did not have the authority to terminate

[his employment] without a shareholder vote or vote of the Board of Directors." Compl. ¶¶ 38–44. The problem with this claim is that it is plainly contradicted by Vujovic's own complaint.

Vujovic asserts that Vorm "never" owned 516 shares of the company. *Id.* ¶ 38. Yet, earlier in his complaint, Vujovic pleads that Vorm owned 516 shares under the original Stock Purchase Agreement, "a true and complete copy" of which he attaches as an exhibit to the complaint. *Id.* ¶ 19, Ex. B. He similarly attaches the Amended SPA, a document that not only acknowledges Vorm's majority control, but that is *signed and dated by Vujovic himself*. *Id.*, Ex. C. at 25–26. Moreover, Vujovic relies on the Amended SPA as the basis for his breach of contract claim. *See supra*.

"It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). And although the Court recognizes that when a document is attached to the complaint it does not mean that it must always take "every word within the exhibit[] as true for purposes of pleading[,] . . . [a] blanket adoption rule makes sense in the context of an attached contract . . . because the contract represents an agreement between two or more parties to which the law binds them." *Id.* at 455. In this sense, Vujovic has pleaded himself out of court with regard to Count II. While Vujovic claims that Vorm was merely the "purported" majority owner of Tekkra, the contract he signed and attached to the complaint says otherwise. Count II is therefore dismissed.

### III. Count V – Conversion

Vorm also moves to dismiss Count V of the Amended Complaint. In Count V, Vujovic alleges that "[t]he redemption of [his] shares . . . over his protest constituted conversion."

Compl. ¶ 47. According to Vujovic, the redemption event was caused by "the acts of Vorm in terminating his employment." *Id.* ¶ 45.

To state a claim for conversion, "a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008). On these facts, however, Vujovic cannot get past the first element. Count V is necessarily dependent on Count I, the breach of contract claim; that is, Vujovic must first show that he could only be terminated for cause. For the reasons above, Count I has been dismissed. And without Count I to support it, Count V also fails.

Moreover, Count V is deficient for reasons independent of Count I. In order to state a claim for conversion under Illinois law, a plaintiff must plead that he made a demand for return of the property from the defendant, which Vujovic has not done. *See id.* Vujovic does not contest this point, but rather argues that Indiana law should apply because the Amended SPA had an Indiana choice of law provision. And, under Indiana law, conversion does not require a plaintiff to plead he or she demanded the return of the property; "[t]he essential elements . . . are an immediate, unqualified right to possession resting on a superior claim of title." *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind. 1993). But that provision only provides that the Amended SPA "shall be construed and interpreted according to Indiana law." Compl., Ex. C, § 8.11. It does not govern a dispute that arises out of common law.

To decide what state's laws govern this claim, the Court must look to Illinois' choice-of-law rules, which employs the most significant relationship test. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "As its name implies, the 'most significant relationship' test

seeks to find which state bears the most significant relationship to the occurrence and the parties involved in the action, and then applies that state's laws." *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990). Relevant factors include: "the place where the injury occurred; the place where the conduct causing the injury occurred; the parties' domiciles, residences, places of incorporation, and places of business; and the place where the parties' relationship, if any, is centered." *Id.*

Here, the facts weigh almost exclusively in favor of Illinois: the parties reside in Illinois, the parties worked together at Tekkra's principal place of business in Illinois, and the alleged injury and conduct causing the injury occurred in Illinois. *See id.* ("Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred."). Accordingly, Illinois law applies, and Vujovic has failed to state a claim for conversion. Count V is dismissed.

## Conclusion

For these reasons, the Court grants Defendant's motion to dismiss [24]. Counts I, II, and V are hereby dismissed without prejudice. To the extent that Plaintiff wishes to amend his complaint consistent with this order, he must file a motion for leave to amend within fourteen days.

**SO ORDERED**              **ENTER: 9/1/15**

*/s/ John Z. Lee*

_____

**JOHN Z. LEE**
**United States District Judge**